# UNITED STATES DISTRICT COURT
for the
Middle District of Louisiana

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. 16- mj- 8
)
Information Associated with Cellular Telephone Assigned )
Call Number 352-613-3582 )
That is Stored at Premises Controlled by METROPCS )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the ___Western___ District of ___Washington___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846. | Conspiracy to Distribute 500 grams or more of Cocaine |

The application is based on these facts:
SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Sabrina Gonzales, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 02/19/2016

*Judge's signature*

City and state: Baton Rouge, Louisiana

Erin Wilder-Doomes, Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT

FOR MIDDLE DISTRICT OF LOUSISANA

IN THE MATTER OF THE SEARCH :
OF INFORMATION ASSOCIATED :
WITH CELLULAR TELEPHONE ASSIGNED : CASE NO. 16-
CALL NUMBER 352-613-3582, THAT IS :
STORED AT PREMISES CONTROLLED BY :
METROPCS :

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Sabrina Gonzales being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with certain accounts that is stored at premises owned, maintained, controlled, or operated by MetroPCS, a wireless provider headquartered at Bellevue, Washington. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), 2703(c)(1)(A) and 2703(c)(2) to require MetroPCS to disclose to the government records and other information in its possession pertaining to the subscriber or customer associated with the accounts, including the contents of communications and historical cell-site location data.

2. I am a Special Agent of the Drug Enforcement Administration, duly appointed according to law and acting as such, and have been employed by Drug Enforcement Administration for approximately twenty-four years. In connection with my official duties, I investigate criminal violations of the Controlled Substances Act (CSA). I have received special training in the enforcement of laws concerning controlled substances as found in Title 21 of the

United States Code. During my training and experience, it is known that narcotic traffickers utilized mobile cellular devices as tools in furtherance of their distribution network.

3. As a Drug Enforcement Administration Special Agent, I have conducted numerous investigations of unlawful drug distribution in violation of Title 21 U.S.C. §§ 841(a)(1) and 846, and conducted, or participated in, electronic and physical surveillance, surveillance of undercover transactions, the introduction of undercover agents, the execution of search warrants, debriefings of cooperating sources and reviews of taped conversations, and drug records. Through my training, education and experience, I am familiar with the manner in which illegal drugs are transported, stored, and distributed and the methods of payment for such drugs. In addition, I have conducted follow-up investigations concerning the concealment of assets, money, bank records, etc., and the identification of co-conspirators through the use of ledgers, telephone bills and records, photographs and bank checks, as related to drug trafficking.

4. I participated in investigations involving the interception of wire communications devices and I am familiar with the ways in which drug traffickers conduct their business, including, but not limited to, their methods of importing and distributing drugs, their use of cellular telephones and of digital display paging devices and their use of numerical codes and code words to conduct their transactions. Also during these investigations, I have reviewed and interpreted thousands of conversations related to the distribution of cocaine, marijuana and other controlled substances.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 21 U.S.C. §§ 841(a)(1) and 846 have been committed by Shelby Collazo and others. There is also probable cause to search the information described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

## PROBABLE CAUSE

7. This application arises from a Baton Rouge Police Department traffic stop that occurred on February 8, 2015 that uncovered approximately 4.49 kilograms of cocaine in a car. On February 8, 2015, at approximately 11:58 p.m., Baton Rouge Police Department Officer Luke Cowart conducted a traffic stop on a 2015 Chevrolet Malibu at the 900 block of Interstate 12 in Baton Rouge, Louisiana ("Chevrolet Malibu traffic stop"). Assisting officers also stopped a 2015 Dodge Caravan ("Dodge Caravan traffic stop") which was observed traveling in tandem. Approximately 4.49 kilograms of cocaine were found in the Chevrolet Malibu, which was driven by Shelby Collazo ("Collazo"). Lamechia Richburgh ("Richburgh") was a passenger in the Chevrolet Malibu. Kareem McKinnon ("McKinnon") was driving the Dodge Caravan, and Arthur William Armstrong ("Armstrong") and co-conspirator #3 were passengers in the Dodge Caravan. This application seeks information from the cellular telephone account used by Kareem McKinnon.

8. Arthur William Armstrong, Shelby Collazo, and Lamechia Richburgh have all pleaded guilty to conspiracy to possess with the intent to distribute cocaine. In the factual basis in Armstrong's plea agreement, he stipulates that "On or about February 8, 2015, the defendant, and co-conspirators #2 [Kareem McKinnon], #3, #4, and #5

3

conspired to purchase at least 4.5 kilograms of cocaine from one of the defendant's sources of supply in Houston, Texas, to transport back to Florida." Kareem McKinnon is referred to as "co-conspirator #2" in the plea agreements and Bills of Information of his co-defendants, as he was not indicted at the time these plea agreements and Bills of Information were signed. McKinnon has since been indicted and charged with one count of conspiracy to distribute 500 grams or more of cocaine.

9. Additionally, the factual basis in Shelby Collazo's plea agreement states "Co-conspirator #1 instructed the defendant and co-conspirator #4 to transport cocaine from Houston back to Florida in the rental car that the defendant and co-conspirator #4 drove. Co-conspirators #1, #2 [Kareem McKinnon], and #3 followed the car driven by the defendant and co-conspirator #4, which contained cocaine, in order to ensure it would arrive in Florida." Shelby Collazo has also stated to the government during a debrief that Kareem McKinnon walked into a hotel room she stayed in the night before the purchase of the cocaine in Houston, and ordered her to watch a large quantity of money that was wrapped in a jacket.

10. Finally, the factual basis in Lamechia Richburgh's plea agreement states "On or about February 7, 2015, the defendant travelled to Houston, Texas with four co-conspirators in order to purchase cocaine that would be transported back to Citrus County, Florida and distributed for profit. In addition, between January 2, 2015 and February 7, 2015, the defendant had made previous trips to Houston to transport illegal

drugs back to Florida with Arthur William Armstrong ("co-conspirator #1) and co-conspirators #2 [Kareem McKinnon] and #3."[1]

11. The night of his arrest, Kareem McKinnon requested an attorney, but later spontaneously blurted out that "all the dope is mine . . . whatever y'all found, all mine." However, Kareem McKinnon was unable to specify the quantity and purchase price of the narcotics that he purchased, or the location of the purchase of the narcotics.

12. After his arrest which followed the Dodge Caravan traffic stop, Kareem McKinnon stated that the telephone number he uses is 352-613-3582. Information obtained from an administrative subpoena that sought non-content information about the cellular telephone used by Kareem McKinnon (the Cellular Telephone assigned call number 352-613-3582) indicates that Kareem McKinnon either sent or received phone calls or text messages from Armstrong's cellular telephone on 18 occasions between 1/20/2015 and 2/4/2015. The information obtained from the administrative subpoena also stated the account associated with the Cellular Telephone assigned call number 352-613-3582 is registered to another person, but again, McKinnon stated to law enforcement this was his telephone number and the telephone was in his possession the night of the Dodge Caravan traffic stop.

13. The night of the Dodge Caravan traffic stop, Armstrong's cell phone, the cellular telephone which is assigned call number 352-464-7314 ("Armstrong's phone"), was seized by BRPD from Armstrong. On March 2, 2015, Armstrong's phone was turned over to the Drug Enforcement Administration from the Baton Rouge Police Department. January 2, 2015 is the first date on which historical cell site location data shows Armstrong's phone being used in Baton Rouge. Armstrong has stated his trips

---

[1] Armstrong and Collazo have also testified in front of a Grand Jury and corroborated this information.

with Kareem McKinnon to purchase cocaine in Houston began around January of 2015. Historical cell site location data also shows Armstrong's phone being used in Baton Rouge on January 26, February 1, February 2, February 8 and February 9.

14. The Cellular Telephone assigned call number 352-613-3582 is currently in the lawful possession of the Drug Enforcement Administration. The night of the Dodge Caravan traffic stop, the Cellular Telephone assigned call number 352-613-3582 was seized from Kareem McKinnon by Baton Rouge Police Officers after his arrest that followed the Dodge Caravan traffic stop. Early in the morning on February 9, 2015, in the wake of the Chevrolet Malibu and Dodge Caravan traffic stops, Officer Luke Cowart contacted the Drug Enforcement Administration to request assistance. On March 2, 2105, the cellular telephone assigned call number 352-613-3582 was turned over to the Drug Enforcement Administration from the Baton Rouge Police Department.

15. In my training and experience, I have learned that MetroPCS is a company that provides cellular telephone access to the general public, and that stored electronic communications, including retrieved and unretrieved voicemail, text, and multimedia messages for MetroPCS subscribers may be located on the computers of MetroPCS. Further, I am aware that computers located at MetroPCS contain information and other stored electronic communications belonging to unrelated third parties.

16. Wireless phone providers often provide their subscribers with voicemail services. In general, a provider will store voicemail messages on behalf of a particular subscriber until the subscriber deletes the voicemail. If the subscriber does not delete the message, the message may remain in the system of MetroPCS for weeks or months.

6

17.     Among the services commonly offered by wireless phone providers is the capacity to send short text or multimedia messages (photos, audio, or video) from one subscriber's phone or wireless device to another phone or wireless device via one or more wireless providers. This service is often referred to as "Short Message Service" ("SMS") or "Multimedia Messaging Service" ("MMS"), and is often referred to generically as "text messaging" or "wireless messaging." Based on my knowledge and experience, I believe that stored electronic communications, including SMS and MMS messages that have been sent or received by subscribers, may be stored by MetroPCS for short periods incident to and following their transmission. In addition, providers occasionally retain printouts from original storage of text messages for a particular subscriber's account.

18.     Wireless phone providers typically retain certain transactional information about the use of each telephone, voicemail, and text-messaging account on their systems. This information can include log files and messaging logs showing all activity on the account, such as local and long distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or e-mail addresses associated with particular telephone calls, voicemail messages, and text or multimedia messages. Providers may also have information about the dates, times, and methods of connecting associated with every communication in which a particular cellular device was involved.

19.     Many wireless providers retain information about the location in which a particular communication was transmitted or received. This information can include data about which "cell towers" (i.e., antenna towers covering specific geographic areas) received a radio signal from the cellular device and thereby transmitted or received the communication in question.

20. Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages. A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received. The provider could have this information because each cellular device has one or more unique identifiers embedded inside it. Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Equipment Identifier ("MEID"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Station Equipment Identity ("IMEI"). When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers as a matter of course.

21. Wireless providers also maintain business records and subscriber information for particular accounts. This information could include the subscribers' full names and addresses, the address to which any equipment was shipped, the date on which the account was opened, the length of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscribers' Social Security Numbers and dates of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscribers. In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed). The providers may also have payment information for the account, including the

dates and times of payments and the means and source of payment (including any credit card or bank account number).

22. In some cases, wireless subscribers may communicate directly with a wireless provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Wireless providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

23. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require MetroPCS to disclose to the government copies of the records and other information (including the content of communications and historical cell-site location data) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

24. Based on the forgoing, I request that the Court issue the proposed search warrant.

25. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C.1 § 2711. 18 U.S.C.§§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C.§ 2711(3)(A)(i).

26.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Respectfully submitted,

_____
Sabrina Gonzales
Special Agent
Drug Enforcement Administration

Sworn to before me and subscribed in my presence at Baton Rouge, Louisiana, this 19th, day of February, 2016.

_____
HONORABLE ERIN WILDER-DOOMES
UNITED STATES MAGISTRATE JUDGE
MIDDLE DISTRICT OF LOUISIANA

10

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the Cellular Telephone Assigned call number 352-613-3582, that is stored at premises owned, maintained, controlled, or operated by MetroPCS, a wireless provider headquartered at Bellevue, Washington.

## ATTACHMENT B

### Particular Things to be Seized

### I. Information to be disclosed by MetroPCS

To the extent that the information described in Attachment A is within the possession, custody, or control of MetroPCS including any messages, records, files, logs, or information that have been deleted but are still available to MetroPCS or have been preserved pursuant to a request made under 18 U.S.C.§ 2703(f), MetroPCS is required to disclose the following information to the government for each account or identifier listed in Attachment A:

  a. All voice mail, text, and multimedia messages stored and presently contained in, or on behalf of the account or identifier, from January 2, 2015 to present;

  b. All existing printouts from original storage of all of the text messages described above, from January 2, 2015 to present;

  c. All transactional information of all activity of the telephones and/or voicemail accounts described above, including log files, messaging logs, local and long distance telephone connection records, records of session times and durations, dates and times of connecting, methods of connecting, telephone numbers associated with outgoing and incoming calls, cell towers used, and/or locations used from January 2, 2015 to present;

  d. All text messaging logs, including date and time of messages, and identification numbers associated with the handsets sending and receiving the message, from January 2, 2015 to present;

  e. Detailed billing records, showing all billable calls including outgoing digits, from January 2, 2015 to present;

   f. All payment information, including dates and times of payments and means and source of payment (including any credit or bank account number), from January 2, 2015 to present;

   g. Incoming and outgoing telephone numbers, from January 2, 2015 to present;

   h. All data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from each cellular telephone or device assigned to the account, from January 2, 2015 to present.

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 21 U.S.C. §§ 841(a)(1) and 846 involving Kareem McKinnon from January 2, 2015 to the present, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

  (a) the sale of illegal drugs.

  (b) lists of customers and related identifying information;

  (c) types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

  (d) any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

  (e) any information recording Kareem McKinnon's schedule or travel from January 2, 2015 to the present;

  (f) all billing records and account information.

AO 93 (Rev. 12/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
for the
Middle District of Louisiana



In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No. 16-8 (mj)
)
Information Associated with Cellular Telephone Assigned Call )
Number 352-613-3582 )
That is Stored at Premises Controlled by METROPCS )

## SEARCH AND SEIZURE WARRANT

To:  Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the ____Western____ District of ____Washington____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:
See Attachment B.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

YOU ARE COMMANDED to execute this warrant on or before   February 29, 2016
                                                          *(not to exceed 14 days)*

☑ in the daytime  6:00 a.m. to 10 p.m.   ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge Erin Wilder-Doomes_____.
                                    *(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*  ☐ for _____ days *(not to exceed 30)*.
                                                          ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: 2/19/16, 9:40 a.m.          _____Erin Wilder-Doomes_____
                                                          *Judge's signature*

City and state:  Baton Rouge, LA          Erin Wilder-Doomes, U.S. Magistrate Judge
                                                  *Printed name and title*

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the Cellular Telephone Assigned call number 352-613-3582, that is stored at premises owned, maintained, controlled, or operated by MetroPCS, a wireless provider headquartered at Bellevue, Washington.

## ATTACHMENT B

### Particular Things to be Seized

### I. Information to be disclosed by MetroPCS

To the extent that the information described in Attachment A is within the possession, custody, or control of MetroPCS including any messages, records, files, logs, or information that have been deleted but are still available to MetroPCS or have been preserved pursuant to a request made under 18 U.S.C.§ 2703(f), MetroPCS is required to disclose the following information to the government for each account or identifier listed in Attachment A:

    a.    All voice mail, text, and multimedia messages stored and presently contained in, or on behalf of the account or identifier, from January 2, 2015 to present;

    b.    All existing printouts from original storage of all of the text messages described above, from January 2, 2015 to present;

    c.    All transactional information of all activity of the telephones and/or voicemail accounts described above, including log files, messaging logs, local and long distance telephone connection records, records of session times and durations, dates and times of connecting, methods of connecting, telephone numbers associated with outgoing and incoming calls, cell towers used, and/or locations used from January 2, 2015 to present;

    d.    All text messaging logs, including date and time of messages, and identification numbers associated with the handsets sending and receiving the message, from January 2, 2015 to present;

    e.    Detailed billing records, showing all billable calls including outgoing digits, from January 2, 2015 to present;

    f.    All payment information, including dates and times of payments and means and source of payment (including any credit or bank account number), from January 2, 2015 to present;

    g.    Incoming and outgoing telephone numbers, from January 2, 2015 to present;

    h.    All data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from each cellular telephone or device assigned to the account, from January 2, 2015 to present.

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 21 U.S.C. §§ 841(a)(1) and 846 involving Kareem McKinnon from January 2, 2015 to the present, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a) the sale of illegal drugs.

(b) lists of customers and related identifying information;

(c) types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

(d) any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

(e) any information recording Kareem McKinnon's schedule or travel from January 2, 2015 to the present;

(f) all billing records and account information.